IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 15-3812 |
| v. | : | |
| | : | |
| CROTHALL SERVICES GROUP, INC. | : | |
| | : | |
| Defendant. | : | |

**June 28, 2016**                                                                                            **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this lawsuit against Defendant Crothall Services Group, Inc. ("Crothall") for alleged violations of § 709(c) of Title VII and an EEOC recordkeeping regulation, 29 C.F.R. § 1607.4(A). The parties have filed cross-motions for judgment on the pleadings addressing certain threshold legal issues. *See* ECF Nos. 13, 14.[1] For the reasons stated below, I will deny both motions without prejudice to raise the sufficiency of Crothall's records after the close of discovery.

---

[1]  Although Crothall styles its motion as a Motion for Summary Judgment, I will construe it as a cross-motion for judgment on the pleadings because no discovery has occurred in this case. *See, e.g.*, *Tauro v. Direct Energy, LP*, No. 14-816, 2015 WL 1198421, at *1 n.1 (W.D. Pa. Mar. 16, 2015) (construing a motion for summary judgment filed prior to the initiation of discovery as a motion for judgment on the pleadings).

1

I.     BACKGROUND

The EEOC brings suit against Crothall, a Pennsylvania corporation with more than 100 employees, for purportedly violating recordkeeping requirements imposed by Title VII and the EEOC's regulations. A brief overview of the relevant statutory and regulatory landscape follows.

A.  Title VII and the EEOC's Regulations

Title VII prohibits employment discrimination against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Title VII gives the EEOC limited authority to promulgate regulations that implement the statute. Two provisions of the statute are particularly relevant for this dispute. First, under § 709(c) of Title VII[2]:

> Every employer, employment agency, and labor organization subject to this subchapter shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder.

42 U.S.C. § 2000e-8(c). Section 709(c) further authorizes the EEOC to seek an injunction from a federal district court to compel compliance with the statute's provisions. *See* 42 U.S.C. § 2000e-8(c) ("If any person required to comply with the provisions of this subsection fails or refuses to do so, the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission . . . have jurisdiction to issue to such person an order requiring him to comply."). Second, § 713(a) of Title VII gives the EEOC

---

[2] In their briefs, both parties refer to the statutory sections as enumerated in Title VII, rather than their corresponding United States Code sections. I will adopt the parties' convention throughout this Memorandum.

"the authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e-12(a).

While the EEOC has not adopted any "generally applicable" recordkeeping regulations under Title VII, the agency "reserves the right to impose recordkeeping requirements upon individual employers or groups of employers. . . whenever, in its judgment, such records . . . are . . . required to accomplish the purposes of [T]itle VII." 29 C.F.R. § 1602.12. The EEOC has issued regulations dealing with recordkeeping in specific contexts. As relevant here, in 1978, after notice and comment[3], the EEOC promulgated the Uniform Guidelines on Employee Selection Procedures ("UGESP"). Issued pursuant to §§ 709(c) and 713(a) of Title VII, the UGESP relates specifically to selection procedures, which are defined as "measure[s], combination[s] of measures, or procedure[s] used as a basis for any employment decision." 29 C.F.R. § 1607.16(Q). Although much of the UGESP addresses methods to determine whether a selection procedure has a disparate impact and standards to demonstrate that a selection procedure is related to a legitimate business purpose, one section of the UGESP, 29 C.F.R. § 1607.4(A), deals with recordkeeping. This recordkeeping provision states:

> Each user should maintain and have available for inspection records or other information which will disclose the impact which its tests and other selection procedures have upon employment opportunities of persons by identifiable race, sex, or ethnic group as set forth in paragraph B of this section, in order to determine compliance with these guidelines. Where there are large numbers of applicants and procedures are administered

---

[3] A Notice of Proposed Rulemaking ("NPRM") regarding the UGESP was published on December 30, 1977. *See* 42 Fed. Reg. 65,542 (Dec. 30, 1977). This NPRM specifically noted that "[b]ecause the proposed guidelines also impose recordkeeping obligations, and because of their importance, the . . . agencies invite interested persons to participate in a public hearing." *Id*. More than 200 organizations and individuals submitted written comments, and a public hearing was held on April 10, 1978. In light of the public hearing and various comments received, "changes [were] made to the documentation requirements" of the UGESP. Adoption of Employee Selection Procedures, 43 Fed. Reg. 38,290, 38,292 (Aug. 25, 1978). On August 25, 1978, the EEOC adopted the UGESP, including 29 C.F.R. § 1607.4(A). *See* Final Rule, 43 Fed. Reg. 38,312 (Aug. 25, 1978).

3

> frequently, such information may be retained on a sample basis, provided that the sample is appropriate in terms of the applicant population and adequate in size.

29 C.F.R. § 1607.4(A).

### B. The EEOC's Lawsuit Against Crothall

Crothall bases employment decisions for certain positions on criminal background checks and assessments of applicants' criminal histories (collectively, "criminal history assessments"). On July 9, 2015, the EEOC brought suit against Crothall, claiming that the company's use of criminal history assessments constitutes a selection procedure, and that the company failed to maintain records relating to selection procedures that are required by § 709(c) and 29 C.F.R. § 1607.4(A).[4] Crothall concedes that its criminal history assessments are selection procedures, but challenges the EEOC's standing to sue and the EEOC's claim that Crothall is required to maintain records under § 709(c) and 29 C.F.R. § 1607.4(A). On October 19, 2015, I ordered the parties to file dispositive motions addressing these threshold legal issues. On November 20, 2015, the parties filed their cross-motions.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  There is "no material difference in the applicable legal standards" for a motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss under Rule 12(b)(6).

---

[4] In 2010, the EEOC began to investigate whether Crothall's use of criminal history assessments had a disparate impact on African American, Hispanic, and male applicants, in violation of Title VII. In 2013, the EEOC filed a subpoena enforcement action against Crothall in this Court. *See EEOC v. Crothall Servs. Grp.*, No. 13-mc-27 (E.D. Pa. filed Feb. 19, 2013). In that action, the EEOC sought to compel Crothall to produce records that disclosed the impact of its criminal history assessments on employment opportunities for individuals based on race, sex, and ethnic group. Crothall produced some records in response to the EEOC's subpoena. The EEOC claims that, as a result of its investigation, it discovered that Crothall maintained inadequate records.

*Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). As with a Rule 12(b)(6) motion, a court must treat all well-pled allegations in the complaint as true and draw all inferences in favor of the non-moving party. *See Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 259 n.25 (3d Cir. 2010). Where, as here, cross-motions have been filed, a court must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Mercury Sys., Inc. v. Shareholder Representative Servs., LLC*, 820 F.3d 46, 51 (1st Cir. 2016) (internal quotation marks omitted).

### III. DISCUSSION

At the Rule 16 scheduling conference, the parties requested that certain threshold legal issues be resolved prior to discovery. Pursuant to the parties' submissions, in my October 19, 2015 Order I directed them to address:

- Whether EEOC is authorized to bring this action to enforce recordkeeping regulations;
- Whether a user of a selection procedure is required to make, keep, and make available for inspection records pursuant to the recordkeeping regulations; and,
- Whether Defendant Crothall Services Group's use of criminal history assessments constitutes the use of a selection procedure as defined by the recordkeeping regulations

Order, ECF No. 9. Addressing the parties' arguments in their briefs, I will determine (1) whether the EEOC has standing to bring this action; and (2) whether Crothall is required to make, keep, and make available for inspection records under § 709(c) and 29 C.F.R. § 1607.4(A).[5] As discussed below, I conclude that the EEOC has standing and that § 709(c) and 29 C.F.R. § 1607.4(A) impose mandatory recordkeeping requirements on Crothall.

---

[5] Because Crothall concedes that its criminal history assessments qualify as selection procedures, I need not address the third question identified in my October 19, 2015 Order.

A. <u>The EEOC has Standing to Bring this Lawsuit</u>

Crothall argues that the EEOC lacks standing to bring this action because it has not identified any individual who has suffered or will suffer an injury in fact based on Crothall's alleged recordkeeping violations. It is well established, however, that a federal government agency has standing to sue based on an alleged violation of a federal statute. The EEOC need not identify a specific individual who has been injured by Crothall's alleged recordkeeping violation in order to demonstrate standing because "[a] violation of [a] statute inherently constitutes an injury to the United States." *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010); *see also Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (stating that the government suffers an "injury to its sovereignty arising from violation of its laws"). Moreover, § 709(c) explicitly authorizes the EEOC to seek an injunction from a federal district court to compel compliance with the statute's provisions. *See* 42 U.S.C. § 2000e-8(c) ("If any person required to comply with the provisions of this subsection fails or refuses to do so, the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission . . . have jurisdiction to issue to such person an order requiring him to comply.").

Crothall also claims that the EEOC does not have standing because no statutory violation occurred in this case. The merits of the EEOC's claim that a statutory violation occurred are not germane to the standing inquiry. The Supreme Court has held that "standing in no way depends on the merits of the plaintiff's contention that the particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). A court must determine standing *before* it can adjudicate the merits of a plaintiff's claims. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the

court must establish the requisite standing to sue."). In ruling on standing at this stage of the litigation, a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. Regardless of whether the EEOC can ultimately establish a statutory violation, the EEOC's complaint sufficiently alleges that Crothall violated § 709(c) and 29 C.F.R. § 1607.4(A). Accepting the EEOC's allegations as true, the agency has standing to sue.

    B.  Crothall is Required to Maintain Records Under § 709(c) and 29 C.F.R. § 1607.4(A)

In its motion, Crothall argues that it is not required to maintain records under § 709(c) and 29 C.F.R. § 1607.4(A) because: (1) the EEOC lacked statutory authority to promulgate § 1607.4(A); (2) section 1607.4(A) is only a permissive guideline; and (3) section 709(c) is unconstitutionally vague when read alongside the EEOC's regulations. The EEOC, in turn, claims that: (1) 29 C.F.R. § 1607.4(A) was validly promulgated pursuant to § 709(c); (2) the regulation imposes mandatory requirements on employers; and (3) section 709(c) is not unconstitutionally vague.

    1.  *The EEOC had Statutory Authority to Promulgate 29 C.F.R. § 1607.4(A)*

The EEOC has identified § 709(c) of Title VII as the source of its authority to promulgate 29 C.F.R. § 1607.4(A). Section 709(c) states, in relevant part:

> Every employer, employment agency, and labor organization subject to this subchapter shall (1) *make and keep such records* relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) *preserve such records for such periods*, and (3) *make such reports therefrom as the Commission shall prescribe by regulation* or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder.

7

42 U.S.C. § 2000e-8(c) (emphasis added). The EEOC argues that the statute authorizes the Commission to regulate both the records employers must maintain and preserve and the reports that employers must make. Crothall, in contrast, contends that the phrase "as the Commission shall prescribe by regulation" only modifies "make such reports," and does not modify "make and keep such records" or "preserve such records." Therefore, Crothall argues that the EEOC is only authorized to promulgate reporting regulations, and not recordkeeping regulations like 29 C.F.R. § 1607.4(A).

Crothall's interpretation is contrary to the natural reading of the statute. A common canon of statutory interpretation prescribes that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a . . . modifier normally applies to the entire series." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012); *see also Porto Rico Ry., Light & Pwr. Co. v. Mor*, 253 U.S. 345, 348 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."). Reading the parallel clauses of the statute in context, it is evident that "make and keep such records," "preserve such records," and "make such reports" are all modified by "as the Commission shall prescribe by regulation." Otherwise, it would be unclear which records qualify as "*such* records" in the first two clauses of § 709(c). Thus, the plain language of the statute requires employers to "makes and keep such records" "as the Commission shall prescribe," "preserve such records for such periods" "as the Commission shall prescribe," and "make such reports" "as the Commission shall prescribe."

The Supreme Court has stated that § 709(c) is the source of the EEOC's authority to promulgate a similar recordkeeping regulation. In *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984),

8

the Supreme Court stated that § 709(c) "contemplates that employers will create and retain personnel records" and noted that "[p]ursuant to the authority conferred upon it by [§ 709(c)], the EEOC has promulgated 29 C.F.R. § 1602.14, which requires an employer covered by Title VII to retain all personnel records for six months after they are created." *Shell Oil Co.*, 466 U.S. at 78 & n.35. Several other courts have also suggested that § 709(c) authorizes recordkeeping regulations similar to 29 C.F.R. § 1607.4(A). *See, e.g.*, *EEOC v. Target Corp.*, 460 F.3d 946, 954 (7th Cir. 2006) (discussing recordkeeping regulation promulgated under § 709(c)); *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 108 n.5 (2d Cir. 2001) (noting that 29 C.F.R. § 1602.14, which requires the maintenance of personnel records, "implements" § 709(c)); *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 926 (11th Cir. 1990) (stating that under § 709(c), employers "must keep records" and "must preserve those records for such periods as the Commission shall prescribe, and must make reports on them as the Commission prescribes").

Crothall further contends that, notwithstanding § 709(c), the EEOC's power to promulgate recordkeeping regulations is limited by § 713(a), which authorizes the agency to promulgate "suitable *procedural* regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e-12(a) (emphasis added). Crothall claims that, because of § 713(a), the EEOC is not permitted to issue any substantive regulations.[6] It argues that 29 C.F.R. § 1607.4(A) is substantive, not procedural,[7] and is therefore invalid.

---

[6] A procedural regulation is one that is "primarily directed toward improving the efficient and effective operations of an agency." *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014) (internal quotation marks omitted). A substantive rule, in contrast, is one that "supplements a statute . . . or otherwise effects a substantive change in existing law or policy." *Id.* at 1021; *see also Associated. Dry Goods Corp. v. EEOC*, 720 F.2d 804, 808 (4th Cir. 1983) ("If a regulation or rule enforces rights or imposes definite obligations on the parties, it is ordinarily considered substantive. If, however, it 'really regulates procedure,' *i.e.,* the manner in which an administrative agency carries out its administrative function and responsibilities, the rule is to be deemed procedural.").

[7] The EEOC does not contest Crothall's characterization of 29 C.F.R. § 1607.4(A) as a substantive regulation.

Crothall's argument that §713(a) displaces § 709(c)'s specific authorization to promulgate recordkeeping regulations runs afoul of "one of the most basic interpretive canons, that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (alteration in original) (internal quotation marks omitted); *see also Silverman v. Eastrich Multiple Investor Fund, LP*, 51 F.3d 28, 32 (3d Cir. 1995). Crothall has cited no authority to overcome this canon of statutory interpretation. Although several courts have stated that the EEOC may only issue procedural regulations, these courts have done so in the context of addressing EEOC guidelines about the scope of Title VII's coverage. *See, e.g.*, *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074 (dealing with an EEOC policy statement that Title VII applied to discrimination against American citizens overseas); *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 & n.20 (1976), *superseded by statute on other grounds*, Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555, 92 Stat. 2076 (addressing an EEOC guideline about pregnancy discrimination); *see also Jackson v. Richards Medical Co.*, 961 F.2d 575, 583 (6th Cir. 1992) (noting that *Gilbert* and *Arab-American Oil Co.* involved EEOC policies that "sought to define the scope of Title VII's coverage"). The guidelines at issue in these cases were not promulgated pursuant to the specific grant of rulemaking authority in § 709(c). Indeed, the cases Crothall cites do not address § 709(c) or the EEOC's recordkeeping regulations. As such, they do not establish that § 713(a) is the *exclusive* source of the EEOC's rulemaking authority or that § 713(a) prohibits recordkeeping regulations explicitly authorized by § 709(c).

2. *29 C.F.R. § 1607.4(A) Imposes Mandatory Requirements*

Crothall contends that both the language of 29 C.F.R. § 1607.4(A), and its promulgation as part of the UGESP, suggest that § 1607.4(A) is permissive rather than mandatory.

Crothall emphasizes that § 1607.4(A) only states that employers "*should* maintain and have available for inspection records," and notes that "should" is defined by 29 C.F.R. § 1607.16(S) to mean "action which is necessary to achieve compliance with the guidelines, while recognizing that there are circumstances where alternative courses of action are open to users." Crothall therefore claims that the plain language of 29 C.F.R. § 1607.4(A) merely suggests the kinds of records an employer may wish to maintain regarding its selection procedures in order to comply with the general recordkeeping requirement in § 709(c).

When interpreting regulations, the "first step is to determine whether the language at issue has a plain and unambiguous meaning." *Register v. PNC Fin. Servs. Grp.*, 477 F.3d 56, 67 (3d Cir. 2007) (internal quotation marks omitted); *see also Schaar v. Lehigh Valley Health Servs., Inc.*, 598 F.3d 156, 160 (3d Cir. 2010) (stating that the canons of statutory interpretation apply to the interpretation of regulations). The plain meaning of a regulation is derived not just from the language at issue, but also from the specific context in which that language is used and the broader context of the regulation as a whole. *See Register*, 477 F.3d at 67. Read alongside other recordkeeping provisions in the regulations, it is clear that "should," as used in § 1607.4(A), is intended to be mandatory. For example, 29 C.F.R. § 1607.4(B), which sets forth the specific races and ethnic groups referenced in § 1607.4(A), refers to the records "called for" by the paragraph as "required." Further, a different part of the regulations, 29 C.F.R. § 1607.15(A)(1), imposes a "[s]implified recordkeeping" obligation on employers with less than 100 employees in order to "minimize recordkeeping burdens." A simplified recordkeeping

exception would be unnecessary if § 1607.4(A)'s default recordkeeping provision were not mandatory for employers like Crothall that have more than 100 employees. Finally, 29 C.F.R. § 1602.56 authorizes the EEOC to investigate allegations that an employer "has not complied with the reporting or recordkeeping requirements of . . . part 1607 of this chapter." Therefore, read in context, the use of "should" in § 1607.4(A) is meant to *require* the maintenance of records related to selection procedures.

The Supreme Court has indicated that 29 C.F.R. § 1607.4(A) is mandatory. In *Ward Cove Packing Co. v. Antonio*, the Supreme Court reasoned that imposing a specific causation requirement in disparate impact cases would not be "unduly burdensome on Title VII plaintiffs" because they would have access to records regarding selection procedures that employers are "required" to maintain under 29 C.F.R. § 1607.4(A). 490 U.S. 642, 657-58 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074; *see also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 1007-08 (1988) (Blackmun, J., concurring) (noting that "an employer that complies with the EEOC's recordkeeping requirements [in] 29 CFR §§ 1607.4 and 1607.15 . . . will be better prepared to document the correlation between its employment practices and successful job performance when required to do so by Title VII"). [8] At least two Courts of Appeals have also suggested that § 1607.4(A) requires recordkeeping. *See Lopez v. Massachusetts*, 588 F.3d 69, 77 (1st Cir. 2009) (stating that § 1607.4(A) "required, inter alia, maintaining records that show the impact that examinations have on applicants according to race, sex, or ethnic group"); *Thompson v. Sun Oil Co.*, 523 F.2d 647, 648 n.2 (8th Cir. 1975) (per curiam) (stating that § 1607.4 "requires that an employer have available for inspection evidence that any tests used for hiring are job related"). Collectively,

---

[8]   Although the Supreme Court's discussion of § 1607.4(A) in *Ward Cove* is arguably dicta, Supreme Court dicta is "highly persuasive" and is not "view[ed] . . . lightly." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007) (internal quotation marks omitted).

these courts' interpretations support the conclusion that § 1607.4(A) unambiguously requires employers to maintain records related to selection procedures.

Even if the use of the word "should" in § 1607.4(A) is ambiguous, a court must defer to an agency's consistent interpretation of its own regulation as long as that interpretation is not plainly erroneous or inconsistent with the regulation. *See Conn. Gen. Life Ins. Co. v. Comm'r*, 177 F.3d 136, 144 (3d Cir. 1999) ("Once an agency has adopted regulations interpreting the statute, the agency's consistent interpretation of its own regulation will also be accorded substantial deference."). The agency's interpretation "need not be the only possible reading of a regulation—or even the best one—to prevail." *Decker v. Nw. Envt'l Def. Ctr.*, --- U.S. ----, 133 S. Ct. 1326, 1337 (2013). The EEOC has consistently interpreted § 1607.4(A) as mandatory. *See, e.g.*, Agency Information Collection Activities, 64 Fed. Reg. 42,128, 42,129 (Aug. 3, 1999) (stating that the "UGESP recordkeeping requirements are mandatory"); Adoption of Questions and Answers, 44 Fed. Reg. 11,996, 12,008 (Mar. 2, 1979) (stating that, under § 1607.4(A) and (B), employers are "obliged to maintain evidence indicating the impact which their selection processes have on identifiable race, sex, or ethnic groups"); Notice of Proposed Rulemaking, 42 Fed. Reg. 65,542, 65,542 (Dec. 30, 1977) (noting that the regulations imposed "recordkeeping obligations"). Therefore, any ambiguity about the meaning of "should" in § 1607.4(A) would be resolved in favor of the EEOC's consistent determination that the regulation is mandatory.

Crothall also argues that § 1607.4(A) cannot be mandatory because it was promulgated as part of the UGESP.[9] Although Crothall cites several cases to support this argument, none of these cases suggests that § 1607.4(A) is permissive. Many of the decisions on which Crothall relies do not deal with the UGESP at all, but rather address different EEOC guidelines, such as

---

[9] As already discussed, the UGESP is a set of guidelines that not only addresses recordkeeping, but also establishes various principles to determine whether employee selection procedures are discriminatory.

the EEOC Compliance Manual. *See, e.g.*, *Arabian Am. Oil Co.*, 499 U.S. at 256-57 (EEOC Compliance Manual policy relating to discrimination against Americans abroad); *Gilbert*, 429 U.S. at 140-41 (1972 guideline relating to pregnancy discrimination that was not part of the UGESP); *El v. SEPTA*, 479 F.3d 232, 243 (3d Cir. 2007) (EEOC Compliance Manual policy about when an applicant may be disqualified from a job based on a criminal conviction). Moreover, with one exception, the courts that have found the UGESP to be nonbinding have done so in the context of addressing the UGESP's discretionary principles for determining the validity of selection procedures, rather than the recordkeeping regulation at issue here. *See, e.g.*, *Clady v. Cty. of Los Angeles*, 770 F.2d 1421, 1428 (9th Cir. 1985) (EEOC's four-fifths rule, which is a "rule of thumb" for establishing disparate impact); *Guardians Ass'n of N.Y. City Police Dep't v. Civil Serv. Comm'n*, 630 F.2d 79, 86-87 (2d Cir. 1980) (same); *see also Isabel v. City of Memphis*, 404 F.3d 404, 412 (6th Cir. 2005) (looking to alternative statistical methods for determining disparate impact, even though the EEOC's four-fifths rule was satisfied).[10] As such, the authority on which Crothall relies does not establish that § 1607.4(A) is permissive, especially in light of persuasive caselaw from the Supreme Court and the Courts of Appeals stating that the specific language in § 1607.4(A) is mandatory.

---

[10] Crothall cites one case, *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277 (5th Cir. 1994), which states, in dicta, that the recordkeeping regulations in 29 C.F.R. §§ 1607.4(A) and (B) are not mandatory. *Anderson* is neither binding nor persuasive. The Fifth Circuit concluded that §§ 1607.4(A) and (B) were not binding because they were enacted as part of the UGESP and the UGESP were "not . . . promulgated as regulations and do not have the force of law." 26 F.3d at 1287 n.13. The Fifth Circuit cited the Supreme Court's decision in *Gilbert* and the Ninth Circuit's decision in *Clady* for support. As discussed above, *Gilbert* did not involve the UGESP, and *Clady* involved a portion of the UGESP dealing with the four-fifths rule for establishing disparate impact. *Gilbert* and *Clady* dealt with whether or not EEOC guidelines were mandatory in a context different from § 1607.4(A), which was promulgated after notice and comment and pursuant to an explicit grant of statutory authority in § 709(c) of Title VII. Therefore, these cases are not persuasive.

Ultimately, the plain meaning of § 1607.4(A), courts' interpretations of § 1607.4(A), and the EEOC's own consistent interpretations of the regulation, lead to the conclusion that § 1607.4(A) is mandatory.

3. *The Statute is not Unconstitutionally Vague*

Finally, Crothall advances a somewhat novel argument: that § 709(c) of Title VII is unconstitutionally vague as applied to Crothall because of two regulations— 29 C.F.R. § 1602.12 and 29 C.F.R. § 1607.4(A)—enacted by the EEOC.

As discussed above, Section 709(c) states that "every employer . . . shall (1) make and keep such records relevant to the determination of whether unlawful employment practices have been or are being committed." Section 1602.12 of the EEOC's regulations states that "the Commission has not adopted any requirement, generally applicable to employers, that records be made or kept." 29 C.F.R. § 1602.12. The EEOC does, however, "reserve[] the right to impose recordkeeping requirements" in accordance with § 709(c), whenever doing so is "required to accomplish the purposes of title VII." *Id.* Section 1607.4(A) of the regulations, in turn, requires employers to maintain certain records related to selection procedures. Crothall contends that, read together, these three provisions are contradictory because § 709(c) and 29 C.F.R. § 1607.4(A) impose recordkeeping requirements, while 29 C.F.R. § 1602.12 states that there are no "generally applicable" recordkeeping requirements. According to Crothall, this "presents a legal conundrum for employers," who cannot determine whether or not they are required to maintain records. Def.'s Reply in Supp. Mot. for Summ. J. at 10, ECF No. 20.

A statute is unconstitutionally vague if it fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (internal quotation marks omitted). "The degree

of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Id.* "[I]n the civil context, statutes need not be as precise as in the criminal context and are, therefore, less likely to be invalidated under a void-for-vagueness challenge." *Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 167 (3d Cir. 2008).

29 C.F.R. § 1602.12 establishes that while there is no general recordkeeping requirement, the EEOC reserves the right to impose recordkeeping obligations in specific circumstances. Specific recordkeeping obligations may be promulgated in accordance with §709(c) of Title VII. 29 C.F.R. § 1607.4(A), which requires maintenance of records related to employee selection procedures, is just such a specific recordkeeping requirement promulgated pursuant to § 709(c). A reasonable person of ordinary intelligence would be able to reconcile the lack of a general recordkeeping requirement in § 1602.12, with the language of §709(c) and the specific recordkeeping obligation imposed by § 1607.4(A). Therefore, Crothall's alleged confusion does not meet the high standard for unconstitutional vagueness.

## IV.    CONCLUSION

With respect to the threshold issues identified in my October 19, 2015 Order, the EEOC *does* have the authority to bring this lawsuit and Crothall *is* required to maintain records related to selection procedures under § 709(c) and 29 C.F.R. § 1607.4(A).

In its motion, Crothall also contends that even if the EEOC is authorized to bring suit and the recordkeeping regulation is mandatory, the company has maintained sufficient records to meet the regulatory requirement. This is a factual issue that can only be resolved after discovery. Therefore, I will deny Crothall's motion, but without prejudice to raise the sufficiency of its records after the close of discovery. Crothall's motion will be denied with prejudice in all other respects.

I will also deny the EEOC's Motion for Judgment on the Pleadings at this stage because of the extant factual dispute about the sufficiency of Crothall's records. Although the EEOC's motion only seeks judgment on the threshold issues, granting the motion without resolving the underlying recordkeeping violation claim would arguably constitute an impermissible advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (stating that a federal court's "judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" (internal quotation marks omitted)). Thus, I will deny the EEOC's motion without prejudice to raise the insufficiency of Crothall's records at the close of discovery.

            s/Anita B. Brody

            _____
            ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to: